George Torgun (Bar No. 222085)
Nicole C. Sasaki (Bar No. 298736)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: george@baykeeper.org
Email: nicole@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation, <br><br> Plaintiff, <br> v. <br><br> THE DUTRA GROUP and SAN RAFAEL ROCK QUARRY, INC. <br><br> Defendants. | Civil No. <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES <br><br> (Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*) |

COMPLAINT

Plaintiff San Francisco Baykeeper ("Baykeeper"), by and through its counsel, alleges as follows:

<u>INTRODUCTION</u>

1.      This is a citizen suit, brought pursuant to the section 505(a)(1) of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a)(1), to address violations of the CWA by Defendants The Dutra Group and San Rafael Rock Quarry, Inc. ("Dutra" or "Defendants") arising out of operations at its rock quarry located in San Rafael, California.  Since at least March 6, 2010, Dutra has been discharging and continues to discharge polluted stormwater from its facility located at 1000 Point San Pedro Road, San Rafael, California 94901 (the "Facility") in violation of the express terms and conditions of Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1342, and the General Industrial Stormwater Permit issued by the State of California (NPDES General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ) ("Industrial Stormwater Permit"). Baykeeper seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees, for Dutra's repeated and ongoing violations of the Clean Water Act.

<u>JURISDICTION AND VENUE</u>

2.      This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), 28 U.S.C. § 1331 (an action arising under the laws of the United States), and 28 U.S.C. § 2201 (declaratory relief).

3.      On March 6, 2015, Baykeeper provided notice of intent to file suit against Dutra for Dutra's CWA violations ("Notice Letter") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board") (collectively, "state and federal agencies"), and Dutra, as required by the CWA, 33 U.S.C. § 1365(b)(1)(A).  A copy of the Notice Letter is attached as Exhibit 1.

4.      More than sixty (60) days have passed since the Notice Letter was mailed to Dutra and the state and federal agencies.  Neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint.  No claim in this action is barred by any prior administrative action pursuant to section 309(g) of the CWA, 33 U.S.C. § 1319(g).

5.      Venue is proper in the Northern District of California pursuant to section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

### INTRADISTRICT ASSIGNMENT

6.      Intradistrict assignment of this matter to the San Francisco Division of the Court is appropriate pursuant to Civil Local Rule 3-2(c).  The events or omissions which give rise to Baykeeper's claims occurred in Marin County, which is under the jurisdiction of the San Francisco Division of the Northern District of California.

### PARTIES

7.      Plaintiff Baykeeper is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Oakland, California.  Baykeeper's 3,000 members live and/or recreate in and around the San Francisco Bay area.  Baykeeper is dedicated to protecting the water quality of San Francisco Bay for the benefit of its ecosystems and communities.  To further these goals, Baykeeper actively seeks federal and state agency implementation of the CWA, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

8.      Members of Baykeeper, including citizens, taxpayers, property owners, and residents, live, work, and travel near, and recreate in, San Francisco Bay and its tributaries, into which Dutra discharges pollutants.  These Baykeeper members use and enjoy San Francisco Bay and its tributaries for recreational, educational, scientific, conservation, aesthetic, spiritual, and other purposes.  Dutra's discharges of stormwater containing pollutants impair each of these uses.  Thus, the interests of Baykeeper's members have been, are being, and will continue to be adversely affected by Dutra's failure to comply with the CWA and the Industrial Stormwater Permit.

9.      The May 14, 1997 "Notice of Intent" for the Facility to comply with the terms of the Industrial Stormwater Permit, and each annual report filed for the Facility since 2009 pursuant to the Industrial Stormwater Permit, named "Dutra Materials" as the owner and/or operator, and "San Rafael Rock Quarry" as the Facility's business name.  The Dutra Group's website states that Dutra Materials is one of three integrated companies making up The Dutra Group.  *See* "Home," The Dutra Group, www.dutragroup.com (last accessed on 5/2/2015).  The California Secretary of State's online business portal lists The Dutra Group as an active California corporation, located at 2350 Kerner Boulevard, Suite 200, San Rafael, California 94901.  The California Secretary of State's online business portal lists San Rafael Rock Quarry, Inc. as an active California corporation, also located at 2350 Kerner Boulevard, Suite 200, San Rafael, California 94901.  Plaintiff is therefore informed and believes and thereon alleges that The Dutra Group owns and/or operates the Facility, and San Rafael Rock Quarry, Inc. operates the Facility.

## REGULATORY BACKGROUND

### The Problem of Stormwater Pollution

10.      Stormwater runoff is one of the most significant sources of water pollution in the nation and has been recognized as a leading cause of significant and cumulative harmful impacts to the water quality of San Francisco Bay.  With every rainfall event, hundreds of millions of gallons of polluted rainwater flow from local industrial facilities, such as the Facility, and pour into storm drains, local tributaries, and the Bay.  The consensus among the state and federal agencies and water quality specialists is that stormwater pollution accounts for more than half of the total heavy metal pollution entering the San Francisco Bay watershed each year.

11.      Stormwater runoff from industrial sites such as the Facility causes harm to humans and aquatic life.  In particular, stormwater can contain heavy metal pollutants such as aluminum, chromium, copper, iron, lead, mercury, nickel, tin, and zinc, as well as high concentrations of suspended solids, and nitrate and nitrite.  Exposure and ingestion of heavy metals can cause health problems in people and aquatic animals, including neurological, physiological, and reproductive effects.  Heavy metals have been shown to alter activity in tissues and blood of fish.

COMPLAINT                                                                                           3

12.     High concentrations of total suspended solids ("TSS") degrade optical water quality by reducing water clarity and decreasing light available to support photosynthesis.  TSS have been shown to alter predator-prey relationships (for example, turbid water might make it difficult for fish to see their prey).  Deposited solids alter habitat for fish, aquatic plants, and benthic organisms.  TSS can also be harmful to aquatic life because numerous pollutants, including metals and polycyclic aromatic hydrocarbons ("PAHs"), are adsorbed onto TSS.  Thus, higher concentrations of TSS mean higher concentrations of toxins associated with those sediments.  Inorganic sediments, including settleable matter and suspended solids, have been shown to negatively impact species richness, diversity, and total biomass of filter feeding aquatic organisms on bottom surfaces.

**The Clean Water Act**

13.     CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge is in compliance with various enumerated CWA sections.  Among other things, CWA section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to CWA section 402, 33 U.S.C. § 1342.

14.     CWA section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own EPA-approved permit program for discharges.  In California, the State Board and its nine Regional Boards have approval from EPA to administer an NPDES permit program for the State.  The State Board and Regional Boards issue individual and general NPDES permits regulating water pollutant discharges from various categories of dischargers.

15.     CWA section 402(p), 33 U.S.C. § 1342(p), requires that NPDES permits be issued for stormwater discharges "associated with industrial activity."

16.     CWA section 301(b) requires that, by March 31, 1989, all point source dischargers, including those discharging polluted stormwater, must achieve technology-based effluent limitations by utilizing the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  *See* 33 U.S.C. § 1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii).

17.     CWA section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. § 1365(a)(1); *see* 33 U.S.C. § 1362(5).

18.     CWA section 505(a) authorizes a citizen suit action for injunctive relief.  33 U.S.C. § 1365(a).

19.     CWA violators are subject to an assessment of civil penalties of up to $37,500 per day per violation for violations occurring after January 12, 2009.  33 U.S.C. § 1319(d); 40 C.F.R. §§ 19.1-19.4.

**State Regulations**

20.     Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality Standards, including water quality objectives and beneficial uses for navigable waters of the United States.  The CWA prohibits discharges from causing or contributing to a violation of such state Water Quality Standards.  *See* 33 U.S.C. § 1311(b)(1)(c); 40 C.F.R. §§ 122.4(a), (d); 40 C.F.R. § 122.44(d)(1).

21.     The State of California regulates water quality through the State Board and nine Regional Boards, and each Regional Board maintains a separate Water Quality Control Plan which contains Water Quality Standards for water bodies within its geographic area.

22.     The San Francisco Bay Regional Water Quality Control Board has adopted the "San Francisco Bay Basin (Region 2) Water Quality Control Plan" ("Basin Plan"), as amended by Resolution No. R2-2010-0100, setting forth the Water Quality Standards and beneficial uses for San Francisco Bay and its tributaries.

23.     The Basin Plan sets forth, among other things, narrative Water Quality Standards for floating material, oil and grease, sediment, settleable matter, and suspended materials, and sets forth numeric Water Quality Standards for pH, arsenic, cadmium, chromium VI, copper, cyanide, lead, mercury, nickel, selenium, silver, tributyltin, zinc, and PAHs.  *See* Basin Plan §§ 3.3.6, 3.3.7, 3.3.9, 3.3.12-3.3.14, 3.3.21, and Table 3-3.  The Basin Plan also includes site specific objectives ("SSOs"), which are Water Quality Standards for specific sites, for certain pollutants of concern, including copper and nickel.  *See* Basin Plan Table 3-3A.

24.     In addition, EPA has promulgated Water Quality Standards for toxic priority pollutants in all California water bodies (the "California Toxics Rule" or "CTR"), which apply to San Francisco Bay and its tributaries, unless expressly superseded by the Basin Plan.  65 Fed. Reg. 31,682 (May 18, 2000); 40 C.F.R. § 131.38.

**The Industrial Stormwater Permit**

25.     In California, the State Board has elected to issue a single, statewide general permit applicable to all stormwater discharges associated with industrial activity.  *See* NPDES General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit").  The Industrial Stormwater Permit is an NPDES permit issued pursuant to CWA section 402(p), 33 U.S.C. § 1342(p).  To discharge stormwater lawfully in California, industrial dischargers must secure coverage under the Industrial Stormwater Permit and comply with its terms or obtain and comply with an individual NPDES permit.  Industrial Stormwater Permit, p. II.

26.     Violations of the Industrial Stormwater Permit are also violations of the CWA.  Industrial Stormwater Permit, Section C(1).

27.     The Industrial Stormwater Permit contains certain absolute prohibitions.  Discharge Prohibition A(1) of the Industrial Stormwater Permit prohibits the direct or indirect discharge of materials other than stormwater ("non-stormwater discharges"), which are not otherwise authorized by an NPDES permit, to the waters of the United States.  Industrial Stormwater Permit, Order Part A(1).  Discharge Prohibition A(2) of the Industrial Stormwater Permit prohibits stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance.  *Id.* at Order Part A(2).  Receiving Water Limitation C(1) of the Industrial Stormwater Permit prohibits discharges that adversely impact human health or the environment.  *Id.* at Order Part C(1).  Receiving Water Limitation C(2) of the Industrial Stormwater Permit prohibits discharges that cause or contribute to an exceedance of any applicable water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.  *Id.* at Order Part C(2).

28.     Under the CWA and the Industrial Stormwater Permit, dischargers must employ Best Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate stormwater

pollution.  33 U.S.C. § 1311(b); Industrial Stormwater Permit, Order Part B(3).  EPA has developed benchmark levels ("Benchmarks") that are objective guidelines to evaluate whether a permittee's BMPs achieve compliance with the BAT/BCT standards.  NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("Multi-Sector Permit"), 65 Fed. Reg. 64,746, 64,766-67 (Oct. 30, 2000); Multi-Sector Permit, 73 Fed. Reg. 56,572, 56,574 (Sept. 29, 2008).

29.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") at the time industrial activities begin.  Industrial Stormwater Permit, Section A(1)(a) and Order Part E(2).  The SWPPP must identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of stormwater and authorized non-stormwater discharges from the facility.  *Id.* at Section A(2).  The SWPPP must identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in stormwater and authorized non-stormwater discharges.  *Id*.  The SWPPP must include BMPs that achieve pollutant discharge reductions attainable via BAT and BCT.  *Id.* at Order Part B(3).

30.     The SWPPP must include:  a narrative description and summary of all industrial activity, potential sources of pollutants, and potential pollutants; a site map indicating the stormwater conveyance system, associated points of discharge, direction of flow, areas of actual and potential pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and pollutant control measures; a description of stormwater management practices; a description of the BMPs to be implemented to reduce or prevent pollutants in stormwater discharges and authorized non-stormwater discharges; the identification and elimination of non-stormwater discharges; the location where significant materials are being shipped, stored, received, and handled, as well as the typical quantities of such materials and the frequency with which they are handled; a description of dust and particulate-generating activities; and a description of individuals and their current responsibilities for developing and implementing the SWPPP.  Industrial Stormwater Permit, Sections A(1)-(10).

31.     The Industrial Stormwater Permit also requires facility operators to properly operate and maintain any facilities and systems of treatment and control installed or used to achieve compliance with the conditions of the Industrial Stormwater Permit and requirements of the SWPPP at all times.  Industrial Stormwater Permit, Section C(5).

32.     The SWPPP and site maps must be assessed annually and revised as necessary to ensure accuracy and effectiveness.  Industrial Stormwater Permit, Section A(1) and Sections B(3)-(4).

33.     Facility operators are further required to develop and implement a monitoring and reporting program ("MRP") when industrial activities begin at a facility.  Industrial Stormwater Permit, Section B(1) and Order Part E(3).  The MRP must ensure that stormwater discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the Industrial Stormwater Permit.  *Id.* at Section B(2).  The MRP must ensure that practices at the facility to prevent or reduce pollutants in stormwater and authorized non-stormwater discharges are evaluated and revised to meet changing conditions at the facility, including revision of the SWPPP.  *Id.*

34.     Pursuant to the monitoring and reporting requirements of the Industrial Stormwater Permit, facility operators must conduct ongoing visual observations of stormwater and non-stormwater discharges and record responsive measures taken to eliminate unauthorized non-stormwater discharges and to reduce or prevent pollutants in stormwater and authorized non-stormwater discharges.  Industrial Stormwater Permit, Sections B(3)-(4).  Facility operators must collect samples of stormwater discharges from all locations where stormwater may be discharged from the facility.  *Id.* at Sections B(5), (7).  Stormwater samples must be analyzed for pH, total suspended solids, total organic carbon (or oil and grease as a substitute), specific conductance, toxic chemicals, and other pollutants which are likely to be present in significant quantities in stormwater discharging from the facility.  *Id.* at Section B(5).

35.     On April 1, 2014, the State Board adopted an updated NPDES General Permit for Discharges Associated with Industrial Activity, Water Quality Order No. 2014-57-DWQ, which has no force or effect until its effective date of July 1, 2015.  As of the effective date, Water Quality Order No. 2014-57-DWQ will supersede and rescind the current Industrial Stormwater Permit, Water Quality Order No. 97-03-DWQ, except for purposes of enforcement actions brought pursuant to the current Industrial Stormwater Permit, Water Quality Order No. 97-03-DWQ.

36.     Once effective, the newly adopted permit will continue to include the same or substantially similar requirements as the Industrial Stormwater Permit, as summarized in Paragraphs

COMPLAINT                                                                                                    8

26-35.  For example, the new permit will continue to require control of pollutant discharges using BAT and BCT to reduce and prevent discharges of pollutants, and any more stringent effluent limitations necessary for receiving waters to meet applicable water quality standards.  While the new permit will also contain newly created "Numeric Action Levels" ("NALs") that trigger various procedural and substantive requirements, the new permit expressly states that NALs are not intended to serve as technology-based or water quality-based numeric effluent limitations, and are not derived directly from either BAT/BCT requirements or receiving water objectives.

## STATEMENT OF FACTS

**Facility Background**

37.     Dutra operates a Facility located at 1000 Point San Pedro Road, San Rafael, California 94901.

38.     The Facility is regulated by the Industrial Stormwater Permit.

39.     Dutra submitted a Notice of Intent to comply with the Industrial Stormwater Permit to the State Board in 1997.

40.     Operations at the Facility generally include, but are not limited to, producing rip rap, base rock, asphalt, fill material and sand, operating and maintaining a fuel dock, lube shop, maintenance shop, fabrication shop, processing plant, and an asphalt plant, and storing vehicles and inert construction debris stockpiles.

41.     Some operations at the Facility occur outdoors and are causing pollutants to be exposed to rainfall.

42.     Vehicles and equipment at the Facility expose many other sources of pollution to the elements, including gasoline, diesel fuel, anti-freeze, battery fluids, and hydraulic fluids.

43.     The types of pollutants that the Facility releases into the immediate environment are known to include, or have the potential to include, among other contaminants: sediment (total suspended solids; "TSS"), iron, nitrite and nitrate, batteries, waste oil, grease, diesel oil, diesel fuel, gasoline, hydraulic oil, lubricants, antifreeze, brake fluid, transmission fluid, polycyclic aromatic hydrocarbons ("PAHs"), construction aggregate, asphaltic oil, cleaning fluids, Portland cement, and other pollutants.

44.     The industrial materials stored and the pollutants generated at the Facility are exposed to stormwater flows.

45.     Activities at the Facility generate significant debris and particulate matter, which contain pollutants and settle on surfaces within the Facility.  During rain events, this pollution washes off of those surfaces and into stormwater discharge points, which flow to San Francisco Bay.

**Activities Contributing to CWA Violations**

46.     Dutra has not developed and/or implemented an adequate SWPPP at the Facility.

47.     Dutra has not developed and/or implemented BMPs that adequately minimize the exposure of pollutants to stormwater at the Facility.

48.     Dutra has not developed and/or implemented BMPs at the Facility that adequately control and minimize polluted runoff from the Facility.

49.     Dutra has not developed and/or implemented BMPs at the Facility that adequately treat and remove pollutants in stormwater prior to discharge.

50.     Dutra has not developed and/or implemented adequate measures to reduce or eliminate stormwater pollution that constitute BAT/BCT.

51.     Dutra has not developed and/or implemented adequate BMPs at the Facility to achieve stormwater discharges that meet EPA Benchmarks or applicable Water Quality Standards.

52.     Dutra has not adequately evaluated and revised the Facility's SWPPP to address these failures.  Dutra has also failed to properly operate and maintain the structures and systems that have been put in place at the Facility to achieve compliance with the Industrial Stormwater Permit and its SWPPP requirements.

53.     Dutra has not developed and/or implemented an adequate MRP at the Facility.

54.     Dutra's monitoring and reporting activities have not resulted in practices that adequately reduce or prevent pollutants from discharging from the stormwater flows from the Facility.

55.     Dutra's monitoring activities have not effectively identified compliance problems at the Facility or resulted in effective revisions of the SWPPP.

56.     Due to Dutra's lack of effective pollution prevention measures, including effective BMPs, and its failure to implement an effective monitoring and reporting program, stormwater from

the Facility becomes polluted with many constituents.  The potential pollutants include: debris, TSS, iron, nitrite and nitrate, batteries, waste oil, grease, diesel oil, diesel fuel, gasoline, hydraulic oil, lubricants, antifreeze, brake fluid, transmission fluid, PAHs, construction aggregate, asphaltic oil, cleaning fluids, Portland cement, and other pollutants.  Pollutants become entrained in stormwater when such water flows over and across the outdoor areas of the Facility.

57.     Polluted stormwater is discharged from the Facility into San Francisco Bay.  San Francisco Bay is a water of the United States.

58.     Dutra's annual stormwater sampling results indicate that the Facility's discharges of stormwater are consistently contaminated with higher levels of pollutants than are permissible under the Industrial Stormwater Permit.

59.     Dutra's annual stormwater sampling results indicate that the Facility's discharges of stormwater are regularly contaminated with higher levels of pollutants than are consistent with BMPs that constitute BAT/BCT.

60.     Dutra's repeated stormwater exceedances of EPA Benchmarks over the past five years for pollutants including TSS, iron, and nitrate indicate that Dutra has failed and continues to fail to meet BAT/BCT.

## CLAIMS

## FIRST CLAIM FOR RELIEF

**Discharges in Violation of Permit Prohibitions of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

61.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

62.     Discharge Prohibition A(2) of the Industrial Stormwater Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water Limitations C(1) and C(2) of the Industrial Stormwater Permit require that storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards contained in a Statewide Water Quality Control Plan or the

applicable Regional Board's Basin Plan.

63.     Since at least March 6, 2010, Dutra has been discharging polluted stormwater from the Facility in violation of the prohibitions of the Industrial Stormwater Permit during every significant rain event (defined by EPA as a rainfall event generating 0.1 inches or more of rain).  *See* Exhibit 1, Notice Letter at Attachment 3.

64.     The polluted stormwater discharged from the Facility during every significant rain event contains pollutants harmful to fish, plants, birds, and human health that have adversely affected, and continue to adversely affect, human health and the environment in violation of Receiving Water Limitation C(1) of the Industrial Stormwater Permit.

65.      Discharges of polluted stormwater from the Facility have in the past caused, and will continue to cause, pollution, contamination, and/or nuisance to the waters of the United States in violation of Discharge Prohibition A(2) of the Industrial Stormwater Permit and the Water Quality Standards set forth in the Basin Plan.

66.     Each day since at least March 6, 2010 that Dutra has discharged polluted stormwater from the Facility in violation of the Industrial Stormwater Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

67.     By committing the acts and omissions alleged above, Dutra is subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

68.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

69.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SECOND CLAIM FOR RELIEF

**Discharge in Violation of Effluent Limitations of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

70.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully

set forth herein.

71.     The Industrial Stormwater Permit's SWPPP requirements and Effluent Limitation B(3) require dischargers to reduce or prevent pollutants in their storm water discharges through the implementation of measures that must achieve BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.

72.     Dutra has discharged and continues to discharge stormwater from the Facility containing levels of pollutants that do not achieve compliance with the BAT/BCT requirements during every significant rain event occurring from March 6, 2010 through the present.  Dutra's failure to develop and/or implement BMPs adequate to achieve the pollutant discharge reductions attainable via BAT or BCT at the Facility is a violation of Effluent Limitation B(3) of the Industrial Stormwater Permit and the CWA.  *See* Industrial Stormwater Permit, Order Part B(3); 33 U.S.C. § 1311(b).

73.     Each day since at least March 6, 2010 that Dutra has discharged stormwater containing pollutants in violation of Effluent Limitation B(3) is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

74.     Dutra's CWA violations described in the paragraphs above will continue in the future until Dutra develops and implements BMPs at the Facility adequate to achieve pollutant discharge reductions attainable via BAT and BCT.

75.     By committing the acts and omissions alleged above, Dutra is subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

76.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

77.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

### THIRD CLAIM FOR RELIEF

**Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan, in Violation of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

78.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

79.     Section A and Order Part E(2) of the Industrial Stormwater Permit requires dischargers of stormwater associated with industrial activity to develop and implement an adequate SWPPP no later than October 1, 1992.

80.     Dutra has failed and continues to fail to develop and implement an adequate SWPPP or implement all necessary revisions to the SWPPP for the Facility as required by the Industrial Stormwater Permit, Sections A(1), (2), (8), and (9) and Order Part E(2).

81.     Dutra has failed and continues to fail to develop or implement a SWPPP for the Facility that includes BMPs adequate to meet the requirements of Section A.

82.     Dutra has failed and continues to fail to adequately develop or implement a SWPPP at the Facility that prevents discharges from violating the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations of the Industrial Stormwater Permit as required by Section A.

83.     Each day since March 6, 2010 that Dutra has failed to adequately develop and/or implement a SWPPP for the Facility in violation of the Industrial Stormwater Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

84.     Dutra has been in violation of the Industrial Stormwater Permit's SWPPP requirements every day since March 6, 2010.  Dutra will continue to be in violation of the SWPPP requirements each day that Dutra fails to develop and fully implement an adequate SWPPP for the Facility.

85.     By committing the acts and omissions alleged above, Dutra is subject to an assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and 1365.

86.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

87.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

COMPLAINT                                                                                          14

**FOURTH CLAIM FOR RELIEF**

**Failure to Develop and Implement an Adequate Monitoring and Reporting Program,**

**in Violation of the Industrial Stormwater Permit**

**(Violations of 33 U.S.C. §§ 1311, 1342)**

88.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

89.     Section B and Order Part E(3) of the Industrial Stormwater Permit require dischargers of stormwater associated with industrial activity to develop and implement a monitoring and reporting program (including, among other things, sampling and analysis of discharges) no later than October 1, 1992.

90.      Dutra has failed and continues to fail to develop and implement an adequate MRP or to implement all necessary revisions to the MRP as required by the Industrial Stormwater Permit.

91.     Dutra's MRP has failed and continues to fail to ensure that discharges from the Facility are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations as required in Sections B(2) and (10) of the Industrial Stormwater Permit.

92.     Dutra has failed and continues to fail to effectively identify compliance problems at the Facility or to effectively revise the SWPPP to address such pollution problems as required by Sections B(2)-(4) of the Industrial Stormwater Permit.

93.     Dutra has failed and continues to fail to monitor all pollutants which are likely to be present in significant quantities in stormwater discharging from the Facility, or all stormwater discharge locations, as required by Section B(5) of the Industrial Stormwater Permit.

94.     Each day since March 6, 2010 that Dutra has failed to develop and implement an adequate MRP for the Facility in violation of the Permit is a separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

95.     Dutra has been in violation of the MRP requirements every day since March 6, 2010. Dutra will continue to be in violation of the MRP requirements each day that Dutra fails to develop and fully implement an adequate MRP for the Facility.

96.     By committing the acts and omissions alleged above, Dutra is subject to an assessment

COMPLAINT                                                                                                    15

of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

97.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

98.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

### FIFTH CLAIM FOR RELIEF

**Unpermitted Discharge of Pollutants in Violation of CWA Section 301(a)**

**(Violations of 33 U.S.C. § 1311)**

99.     Plaintiff incorporates the allegations contained in all other paragraphs as though fully set forth herein.

100.    Dutra has discharged and continues to discharge pollutants from the Facility absent compliance with the Industrial Stormwater Permit.  Thus, Dutra's discharges constitute an unpermitted discharge of pollutants from the Facility to waters of the United States in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

101.    Dutra has been in violation of CWA section 301(a) every day it has discharged stormwater from the Facility to waters of the United States since March 6, 2010.  Dutra will continue to be in violation of the CWA each day that they have unpermitted stormwater discharges from the Facility to waters of the United States.

102.    By committing the acts and omissions alleged above, Dutra is subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

103.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

104.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RELIEF REQUESTED**

Baykeeper respectfully requests this Court to grant the following relief:

1.      Declare Defendant to have violated and to be in violation of sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging pollutants from the Facility in violation of a permit issued pursuant to section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to meet effluent limitations which include the Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology requirements, and for failing to comply with the substantive and procedural requirements of the Industrial Stormwater Permit;

2.      Enjoin Defendant from discharging pollutants from the Facility to stormwater discharge points, which discharge to San Francisco Bay;

3.      Order Defendant to restore all receiving waters damaged by Dutra's illegal discharges of pollutants from the Facility;

4.      Enjoin Defendant from violating sections 301(a) and (b) and section 402(p) of the Clean Water Act and from violating the substantive and procedural requirements of the Industrial Stormwater Permit at the Facility;

5.      Order Defendant to pay civil penalties of up to $37,500 per day for all violations occurring after January 12, 2009 in accordance with CWA section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. §§ 19.1-19.4;

6.      Award Plaintiff its costs (including reasonable attorney, witness, and consultant fees) as authorized by the CWA section 505(d), 33 U.S.C. § 1365(d);

7.      Award such other relief as this Court may deem appropriate.


Dated:  June 10, 2015                          Respectfully Submitted,


/s/ Nicole C. Sasaki
_____

Nicole C. Sasaki
Attorney for Plaintiff
SAN FRANCISCO BAYKEEPER

Exhibit 1



March 6, 2015

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

| | |
|---|---|
| Bill T. Dutra, Owner/CEO | Agent for Service of Process for |
| Harry Stewart, COO | The Dutra Group & |
| James Hagood, CFO | San Rafael Rock Quarry, Inc. |
| The Dutra Group | National Registered Agents, Inc. |
| San Rafael Rock Quarry, Inc. | 818 W. Seventh St. |
| 2350 Kerner Blvd., Ste. 220 | Los Angeles, CA 90017 |
| San Rafael, CA 94901 | |

**Re:     Notice of Violation and Intent to File Suit under the Clean Water Act**

Dear Sirs:

I am writing on behalf of San Francisco Baykeeper ("Baykeeper") to give notice that Baykeeper intends to file a civil action against The Dutra Group and San Rafael Rock Quarry, Inc. (collectively, "Dutra") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA") at Dutra's facility located at 1000 Point San Pedro Road, San Rafael, California (the "Facility").

Baykeeper is a non-profit public benefit corporation organized under the laws of California, with its office in Oakland, California.  Baykeeper's purpose is to protect and enhance the water quality and natural resources of San Francisco Bay, its tributaries, and other waters in the Bay Area, for the benefit of its ecosystems and communities. Baykeeper has over three thousand members who use and enjoy San Francisco Bay and other waters for various recreational, educational, and spiritual purposes.  Baykeeper's members' use and enjoyment of these waters are negatively affected by the pollution caused by Dutra's operations.

This letter addresses Dutra's unlawful discharge of pollutants from the Facility via stormwater into San Francisco Bay.  Specifically, Baykeeper's investigation of the Facility has uncovered significant, ongoing, and continuous violations of the CWA and the National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit").[1]

---

[1] On April 1, 2014, the State Water Resources Control Board adopted an updated NPDES General Permit for Discharges Associated with Industrial Activity, Water Quality Order No. 2014-57-DWQ, which has no force or effect until its effective date of July 1, 2015.  As of the effective date, Water Quality Order No. 2014-57-DWQ will supersede and rescind the current Industrial Stormwater Permit except for purposes of enforcement actions brought pursuant to the current permit.

 

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), a citizen must give notice of his or her intent to file suit.  33 U.S.C. § 1365(b).  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the State in which the violations occur.  As required by section 505(b), this Notice of Violation and Intent to File Suit provides notice to Dutra of the violations that have occurred and which continue to occur at the Facility.  After the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, Baykeeper intends to file suit in federal court against Dutra under CWA section 505(a) for the violations described more fully below.

During the 60-day notice period, Baykeeper is willing to discuss effective remedies for the violations noticed in this letter.  We suggest that Dutra contact us within the next twenty (20) days so that these discussions may be completed by the conclusion of the 60-day notice period.  Please note that we do not intend to delay the filing of a complaint in federal court, and service of the complaint shortly thereafter, even if discussions are continuing when the notice period ends.

## I.      THE LOCATION OF THE ALLEGED VIOLATIONS.

### A.  The Facility.

Dutra's Facility is located at 1000 Point San Pedro Road, San Rafael, California.  At the Facility, Dutra operates an active rock quarry, which produces rip rap, base rock, asphalt, fill material, and sand.  The Facility also maintains a fuel dock, lube shop, maintenance shop, fabrication shop, processing plant, asphalt plant, vehicle storage, spray rack, dock, and inert construction debris stockpiles.  Potential pollutants that may come in contact with stormwater include the following: sediment, iron, nitrite and nitrate, grease and oil, construction aggregate, asphaltic oil, antifreeze, cleaning fluids, and Portland cement.  The Facility has four (4) designated stormwater discharge points, and its stormwater discharges into San Francisco Bay.

### B.  The Affected Water.

San Francisco Bay is a water of the United States.  The CWA requires that water bodies such as San Francisco Bay meet water quality objectives that protect specific "beneficial uses."  The beneficial uses of San Francisco Bay and its tributaries include commercial and sport fishing, estuarine habitat, fish migration, navigation, preservation of rare and endangered species, water contact and non-contact recreation, shellfish harvesting, fish spawning, and wildlife habitat.  Contaminated stormwater from the Facility adversely affects the water quality of the San Francisco Bay watershed and threatens the beneficial uses and ecosystem of this watershed, which includes significant habitat for listed rare and endangered species.

## II.    THE ACTIVITIES AT THE FACILITY CONSTITUTE VIOLATIONS OF THE CLEAN WATER ACT.

It is unlawful to discharge pollutants to waters of the United States, such as San Francisco Bay, without an NPDES permit or in violation of the terms and conditions of an NPDES permit.  CWA § 301(a), 33 U.S.C. § 1311(a); *see also* CWA § 402(p), 33 U.S.C. § 1342(p) (requiring NPDES permit issuance for the discharge of stormwater associated with industrial activities).  The Industrial Stormwater Permit authorizes certain discharges of stormwater, conditioned on compliance with its terms.

In 1997, Dutra submitted a Notice of Intent ("NOI") to be authorized to discharge stormwater from the Facility under the Industrial Stormwater Permit.  However, information available to Baykeeper indicates that stormwater discharges from the Facility have violated several terms of the Industrial Stormwater Permit, thereby violating the CWA.  Apart from discharges that comply with the Industrial Stormwater Permit, the Facility lacks NPDES permit authorization for any other discharges of pollutants into waters of the United States.

### A.  Discharges in Excess of BAT/BCT Levels.

The Effluent Limitations of the Industrial Stormwater Permit prohibit the discharge of pollutants from the Facility in concentrations above the level commensurate with the application of best available technology economically achievable ("BAT") for toxic pollutants[2] and best conventional pollutant control technology ("BCT") for conventional pollutants.[3]  Industrial Stormwater Permit, Order Part B(3).  EPA has published Benchmark values set at the maximum pollutant concentration present if an industrial facility is employing BAT and BCT, as listed in Attachment 1 to this letter.[4]

Dutra's self-reported exceedances of Benchmark values over the last five (5) years, identified in Attachment 2 to this letter, indicate that Dutra has failed and is failing to employ measures that constitute BAT and BCT in violation of the requirements of the Industrial Stormwater Permit.  Baykeeper alleges and notifies Dutra that its stormwater discharges from the Facility have consistently contained and continue to contain levels of pollutants that exceed Benchmark values for iron, nitrite and nitrate, and total suspended solids ("TSS"), and have contained at least one exceedance for oil and grease.

---

[2] BAT is defined at 40 C.F.R. § 442.23.  Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.

[3] BCT is defined at 40 C.F.R. § 442.22.  Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, oil and grease, pH, and fecal coliform.

[4] The Benchmark values are part of EPA's Multi-Sector General Permit ("MSGP") and can be found at: http://www.epa.gov/npdes/pubs/msgp2008_finalpermit.pdf.  *See* 73 Fed. Reg. 56,572 (Sept. 29, 2008) (Final National Pollutant Discharge Elimination System (NPDES) General Permit for Stormwater Discharges From Industrial Activities).  In the latest version of the permit, EPA has proposed the inclusion of Benchmark values for facilities that discharge into saltwater, which can be found at: http://water.epa.gov/polwaste/npdes/stormwater/upload/msgp2013_proposedpermit8.pdf.  *See* 78 Fed. Reg. 59,672 (Sept. 27, 2013) (Draft National Pollutant Discharge Elimination System (NPDES) General Permit for Stormwater Discharges From Industrial Activities).

Notice of Intent to File Suit
March 6, 2015
Page 4 of 7

Dutra's ongoing discharges of stormwater containing levels of pollutants above EPA Benchmark values and BAT- and BCT-based levels of control also demonstrate that Dutra has not developed and implemented sufficient Best Management Practices ("BMPs") at the Facility. Proper BMPs could include, but are not limited to, moving certain pollution-generating activities under cover or indoors, capturing and effectively filtering or otherwise treating all stormwater prior to discharge, frequent sweeping to reduce the build-up of pollutants on-site, installing filters in downspouts and storm drains, and other similar measures.

Dutra's failure to develop and/or implement adequate pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial Stormwater Permit each and every day Dutra discharges stormwater without meeting BAT/BCT. Baykeeper alleges that Dutra has discharged stormwater containing excessive levels of pollutants from the Facility to San Francisco Bay during at least every significant local rain event over 0.1 inches in the last five (5) years.[5] Attachment 3 compiles all dates in the last five (5) years when a significant rain event occurred. Dutra is subject to civil penalties for each violation of the Industrial Stormwater Permit and the CWA within the past five (5) years.

## B. Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

The Industrial Stormwater Permit requires dischargers to develop and implement an adequate Storm Water Pollution Prevention Plan ("SWPPP"). Industrial Stormwater Permit, Section A(1)(a). The Industrial Stormwater Permit also requires dischargers to make all necessary revisions to existing SWPPPs promptly. *Id.* at Order Part E(2).

The SWPPP must include, among other requirements, the following: a site map, a list of significant materials handled and stored at the site, a description and assessment of all potential pollutant sources, a description of the BMPs that will reduce or prevent pollutants in stormwater discharges, specification of BMPs designed to reduce pollutant discharge to BAT and BCT levels, a comprehensive site compliance evaluation completed each reporting year, and revisions to the SWPPP within 90 days after a facility manager determines that the SWPPP is in violation of any requirements of the Industrial Stormwater Permit. *See* Industrial Stormwater Permit, Section A.

Based on information available to Baykeeper, Dutra has failed to prepare and/or implement an adequate SWPPP and/or to revise the SWPPP to satisfy each of the requirements of Section A of the Industrial Stormwater Permit. For example, Dutra's SWPPP does not include, and Dutra has not implemented, adequate BMPs designed to reduce pollutant levels in discharges to BAT and BCT levels in accordance with Section A(8) of the Industrial Stormwater Permit, as evidenced by the data in Attachment 2.

---

[5] Significant local rain events are reflected in the rain gauge data available at: http://www.ncdc.noaa.gov/cdo-web/search.

Accordingly, Dutra has violated the CWA each and every day that it has failed to
develop and/or implement an adequate SWPPP meeting all of the requirements of Section
A of the Industrial Stormwater Permit, and Dutra will continue to be in violation every
day until it develops and/or implements an adequate SWPPP.  Dutra is subject to
penalties for each violation of the Industrial Stormwater Permit and the CWA occurring
within the past five (5) years.

**C.   Failure to Develop and Implement an Adequate Monitoring and
    Reporting Program and to Perform Annual Comprehensive Site
    Compliance Evaluations.**

The Industrial Stormwater Permit requires facility operators to develop and
implement a Monitoring and Reporting Program ("MRP").  Industrial Stormwater Permit,
Section B(1) and Order Part E(3).  The Industrial Stormwater Permit requires that the
MRP ensure that each facility's stormwater discharges comply with the Discharge
Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the
Industrial Stormwater Permit.  *Id*. at Section B(2).  Facility operators must ensure that
their MRP practices reduce or prevent pollutants in stormwater and authorized non-
stormwater discharges as well as evaluate and revise their practices to meet changing
conditions at the facility.  *Id.*  This may include revising the SWPPP as required by
Section A of the Industrial Stormwater Permit.

The MRP must measure the effectiveness of BMPs used to prevent or reduce
pollutants in stormwater and authorized non-stormwater discharges, and facility operators
must revise the MRP whenever appropriate.  *Id*. at Section B(2).  The Industrial
Stormwater Permit requires facility operators to visually observe and collect samples of
stormwater discharges from all drainage areas.  *Id.* at Section B(7).  Facility operators are
also required to provide an explanation of monitoring methods describing how the
facility's monitoring program will satisfy these objectives.  *Id*. at Section B(10).

Dutra has been operating the Facility with an inadequately-developed and/or
inadequately-implemented MRP, in violation of the substantive and procedural
requirements set forth in Section B of the Industrial Stormwater Permit.  For example, the
data in Attachment 2 indicates that Dutra's monitoring program has not ensured that
stormwater discharges are in compliance with the Discharge Prohibitions, Effluent
Limitations, and Receiving Water Limitations of the Industrial Stormwater Permit as
required by Section B(2).  The monitoring program has not resulted in practices at the
Facility that adequately reduce or prevent pollutants in stormwater as required by Section
B(2).  Similarly, the data in Attachment 2 indicate that Dutra's MRP has not effectively
identified or responded to compliance problems at the Facility or resulted in effective
revision of BMPs in use or the Facility's SWPPP to address such ongoing problems as
required by Section B(2).

As a result of Dutra's failure to adequately develop and/or implement an adequate
MRP at the Facility, Dutra has been in daily and continuous violation of the Industrial

Notice of Intent to File Suit
March 6, 2015
Page 6 of 7

Stormwater Permit and the CWA each and every day for the past five (5) years.  These
violations are ongoing.  Dutra will continue to be in violation of the monitoring and
reporting requirements each day that Dutra fails to adequately develop and/or implement
an effective MRP at the Facility.  Dutra is subject to penalties for each violation of the
Industrial Stormwater Permit and the CWA occurring for the last five (5) years.

**D.  Discharges Without Permit Coverage.**

Section 301(a) of the CWA prohibits the discharge of any pollutant into waters of
the United States unless the discharge is authorized by a NPDES permit issued pursuant
to section 402 of the CWA.  *See* 33 U.S.C. §§ 1311(a), 1342.  Dutra sought coverage for
the Facility under the Industrial Stormwater Permit, which states that any discharge from
an industrial facility not in compliance with the Industrial Stormwater Permit "must be
either eliminated or permitted by a separate NPDES permit."  Industrial Stormwater
Permit, Order Part A(1).  Because Dutra has not obtained coverage under a separate
NPDES permit and has failed to eliminate discharges not permitted by the Industrial
Stormwater Permit, each and every discharge from the Facility described herein not in
compliance with the Industrial Stormwater Permit has constituted and will continue to
constitute a discharge without CWA permit coverage in violation of section 301(a) of the
CWA, 33 U.S.C. § 1311(a).

**IV.    PERSONS RESPONSIBLE FOR THE VIOLATIONS.**

The Dutra Group, San Rafael Rock Quarry, Inc. are the persons responsible for
the violations at the Facility described above.

**V.    NAME AND ADDRESS OF NOTICING PARTY.**

Our name, address, and telephone number is as follows:

San Francisco Baykeeper
1736 Franklin Street, Suite 800
Oakland, CA  94612
(510) 735-9700

**VI.    COUNSEL.**

Baykeeper is represented by the following counsel in this matter, to whom all
communications should be directed:

Nicole C. Sasaki, Associate Attorney
George Torgun, Managing Attorney
San Francisco Baykeeper
1736 Franklin Street, Suite 800
Oakland, CA  94612
(510) 735-9700

Nicole C. Sasaki: (510) 735-9700 x110, nicole@baykeeper.org
George Torgun: (510) 735-9700 x105, george@baykeeper.org

## VII.    REMEDIES.

Baykeeper intends, at the close of the 60-day notice period or thereafter, to file a citizen suit under CWA section 505(a) against Dutra for the above-referenced violations. Baykeeper will seek declaratory and injunctive relief to prevent further CWA violations pursuant to CWA sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), and such other relief as permitted by law.  In addition, Baykeeper will seek civil penalties pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, against Dutra in this action.  The CWA imposes civil penalty liability of up to $37,500 per day per violation for violations occurring after January 12, 2009.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4. Baykeeper will seek to recover attorneys' fees, experts' fees, and costs in accordance with CWA section 505(d), 33 U.S.C. § 1365(d).

As noted above, Baykeeper is willing to meet with you during the 60-day notice period to discuss effective remedies for the violations noted in this letter.  Please contact Nicole or George to initiate these discussions.

Sincerely,

Nicole C. Sasaki
Associate Attorney
San Francisco Baykeeper

Cc:

| Gina McCarthy<br>Administrator<br>US EPA, William Jefferson Clinton Bldg.<br>1200 Pennsylvania Avenue, N.W.<br>Mail Code: 1101A<br>Washington, DC 20460 | Bruce Wolfe<br>Executive Officer<br>Regional Water Quality Control Board<br>San Francisco Bay Region<br>1515 Clay Street, Suite 1400<br>Oakland, CA 94612 |
|---|---|
| Jared Blumenfeld<br>Regional Administrator<br>U.S. EPA - Region 9<br>75 Hawthorne Street<br>San Francisco, CA 94105 | Thomas Howard<br>Executive Director<br>State Water Resources Control Board<br>1001 I Street<br>Sacramento, CA 95814 |

**Attachment 1:  EPA Benchmarks,**
**2000 and 2008 Multi-Sector General Permits ("MSGP")**

| Parameter | Units | Benchmark value | Source |
|---|---|---:|---|
| Total Suspended Solids (TSS) | mg/L | 100 | 2008 MSGP |
| Oil & Grease | mg/L | 15 | 2000 MSGP |
| Iron Total | mg/L | 1.0 | 2008 MSGP |
| Nitrate + Nitrite Nitrogen | mg/L | 0.68 | 2008 MSGP |

# Attachment 2:  Table of Exceedances for
# The Dutra Group/San Rafael Rock Quarry, Inc.

Table containing each stormwater sampling result which exceeds EPA Benchmarks.  The EPA Benchmarks are listed in Attachment 1.  All stormwater samples were reported by the Facility during the past five (5) years.

| No. | Sampling Date | Parameter | | Value | Units | Wet Season | Exceeds Bench-mark |
|---|---|---|---|---|---|---|---|
| 1 | 12/7/2010 | Iron Total | = | 4.5 | mg/L | 2010-2011 | √ |
| 2 | 12/17/2010 | Iron Total | = | 6.5 | mg/L | 2010-2011 | √ |
| 3 | 12/17/2010 | Iron Total | = | 7.2 | mg/L | 2010-2011 | √ |
| 4 | 12/17/2010 | Iron Total | = | 21 | mg/L | 2010-2011 | √ |
| 5 | 1/23/2012 | Iron Total | = | 1.5 | mg/L | 2011-2012 | √ |
| 6 | 1/23/2012 | Iron Total | = | 1.2 | mg/L | 2011-2012 | √ |
| 7 | 3/1/2012 | Iron Total | = | 1.3 | mg/L | 2011-2012 | √ |
| 8 | 3/1/2012 | Iron Total | = | 2.4 | mg/L | 2011-2012 | √ |
| 9 | 3/1/2012 | Iron Total | = | 2.8 | mg/L | 2011-2012 | √ |
| 10 | 3/1/2012 | Iron Total | = | 3.1 | mg/L | 2011-2012 | √ |
| 11 | 11/28/2012 | Iron Total | = | 9.7 | mg/L | 2012-2013 | √ |
| 12 | 11/28/2012 | Iron Total | = | 3.7 | mg/L | 2012-2013 | √ |
| 13 | 11/20/2013 | Iron Total | = | 5.5 | mg/L | 2013-2014 | √ |
| 14 | 11/20/2013 | Iron Total | = | 36 | mg/L | 2013-2014 | √ |
| 15 | 11/20/2013 | Iron Total | = | 3.6 | mg/L | 2013-2014 | √ |
| 16 | 11/20/2013 | Iron Total | = | 1.8 | mg/L | 2013-2014 | √ |
| 17 | 4/4/2014 | Iron Total | = | 97 | mg/L | 2013-2014 | √ |
| 18 | 4/4/2014 | Iron Total | = | 1.2 | mg/L | 2013-2014 | √ |
| 19 | 4/4/2014 | Iron Total | = | 1.7 | mg/L | 2013-2014 | √ |
| 20 | 12/7/2010 | Nitrate Total | = | 1.8 | mg/L | 2010-2011 | √ |
| 21 | 12/7/2010 | Nitrate Total | = | 10 | mg/L | 2010-2011 | √ |
| 22 | 12/17/2010 | Nitrate Total | = | 1.4 | mg/L | 2010-2011 | √ |
| 23 | 12/17/2010 | Nitrate Total | = | 3.5 | mg/L | 2010-2011 | √ |
| 24 | 1/23/2012 | Nitrate Total | = | 12 | mg/L | 2011-2012 | √ |
| 25 | 1/23/2012 | Nitrate Total | = | 1.9 | mg/L | 2011-2012 | √ |
| 26 | 1/23/2012 | Nitrate Total | = | 26 | mg/L | 2011-2012 | √ |
| 27 | 1/23/2012 | Nitrate Total | = | 27 | mg/L | 2011-2012 | √ |
| 28 | 3/1/2012 | Nitrate Total | = | 2.6 | mg/L | 2011-2012 | √ |
| 29 | 3/1/2012 | Nitrate Total | = | 13 | mg/L | 2011-2012 | √ |
| 30 | 3/1/2012 | Nitrate Total | = | 2.8 | mg/L | 2011-2012 | √ |
| 31 | 3/1/2012 | Nitrate Total | = | 5.9 | mg/L | 2011-2012 | √ |
| 32 | 11/28/2012 | Nitrate Total | = | 9.4 | mg/L | 2012-2013 | √ |
| 33 | 11/28/2012 | Nitrate Total | = | 8 | mg/L | 2012-2013 | √ |
| 34 | 11/28/2012 | Nitrate Total | = | 20 | mg/L | 2012-2013 | √ |
| 35 | 11/20/2013 | Nitrate Total | = | 8.6 | mg/L | 2013-2014 | √ |

| 36 | 11/20/2013 | Nitrate Total | = | 2.7 | mg/L | 2013-2014 | √ |
| 37 | 11/20/2013 | Nitrate Total | = | 6.8 | mg/L | 2013-2014 | √ |
| 38 | 11/20/2013 | Nitrate Total | = | 8.6 | mg/L | 2013-2014 | √ |
| 39 | 4/4/2014 | Nitrate Total | = | 10 | mg/L | 2013-2014 | √ |
| 40 | 4/4/2014 | Nitrate Total | = | 9.7 | mg/L | 2013-2014 | √ |
| 41 | 4/4/2014 | Nitrate Total | = | 55 | mg/L | 2013-2014 | √ |
| 42 | 12/17/2010 | Oil and Grease | = | 19 | mg/L | 2010-2011 | √ |
| 43 | 12/7/2010 | Total Suspended Solids (TSS) | = | 130 | mg/L | 2010-2011 | √ |
| 44 | 12/17/2010 | Total Suspended Solids (TSS) | = | 210 | mg/L | 2010-2011 | √ |
| 45 | 12/17/2010 | Total Suspended Solids (TSS) | = | 170 | mg/L | 2010-2011 | √ |
| 46 | 12/17/2010 | Total Suspended Solids (TSS) | = | 1000 | mg/L | 2010-2011 | √ |
| 47 | 11/28/2012 | Total Suspended Solids (TSS) | = | 180 | mg/L | 2012-2013 | √ |
| 48 | 11/28/2012 | Total Suspended Solids (TSS) | = | 130 | mg/L | 2012-2013 | √ |
| 49 | 11/20/2013 | Total Suspended Solids (TSS) | = | 120 | mg/L | 2013-2014 | √ |
| 50 | 11/20/2013 | Total Suspended Solids (TSS) | = | 1200 | mg/L | 2013-2014 | √ |
| 51 | 4/4/2014 | Total Suspended Solids (TSS) | = | 2800 | mg/L | 2013-2014 | √ |

## Attachment 3: Alleged Dates of Exceedances by Dutra Group/San Rafael Rock Quarry, February 2010 to February 2015

Days with precipitation one-tenth of an inch or greater, as reported by NOAA's National Climatic Data Center; San Rafael Civic Center, CA station, when a stormwater discharge from the Facility is likely to have occurred.   http://www.ncdc.noaa.gov/cdo-web/search

| 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|------|------|------|------|------|------|
| 3/9 | 1/1 | 1/20* | 1/5 | 2/2 | 2/9 |
| 3/12 | 1/2 | 1/21* | 1/24* | 2/6 | |
| 3/24 | 1/13 | 1/23* | 2/7* | 2/7 | |
| 3/29 | 1/29 | 2/7 | 2/19 | 2/8 | |
| 3/30 | 1/30 | 2/29 | 3/5 | 2/9 | |
| 3/31 | 2/14 | 3/1 | 3/6 | 2/26 | |
| 4/2 | 2/15 | 3/13 | 3/31 | 2/28 | |
| 4/4 | 2/16 | 3/14 | 4/1 | 3/3 | |
| 4/11 | 2/17 | 3/16 | 4/4 | 3/5 | |
| 4/12 | 2/18 | 3/24 | 6/24 | 3/26 | |
| 4/20 | 2/19 | 3/25 | 6/25 | 3/27 | |
| 4/27 | 2/24 | 3/27 | 9/21 | 3/29 | |
| 4/28 | 2/25 | 3/31 | 11/19 | 3/31 | |
| 5/10 | 3/2 | 4/11* | 11/20 | 4/1 | |
| 5/17 | 3/6 | 4/12* | 12/6 | 4/2 | |
| 5/25 | 3/13 | 4/13* | 12/7 | 4/4 | |
| 5/27 | 3/14 | 4/25 | | 4/25 | |
| 10/17 | 3/15 | 10/22 | | 9/25 | |
| 10/22 | 3/17 | 10/24 | | 10/15 | |
| 10/23 | 3/18 | 10/31 | | 10/25 | |
| 10/24 | 3/19 | 11/8 | | 10/31 | |
| 10/29 | 3/20 | 11/9 | | 11/20 | |
| 11/7 | 3/22 | 11/16 | | 11/21 | |
| 11/19 | 3/23 | 11/17 | | 11/23 | |
| 11/20 | 3/24 | 11/20 | | 12/1 | |
| 11/21 | 3/25 | 11/28 | | 12/7 | |
| 11/23 | 3/26 | 11/29 | | 12/12 | |
| 11/27 | 5/16 | 11/30 | | 12/13 | |
| 12/2 | 6/4 | 12/1 | | 12/18 | |
| 12/5 | 6/28 | 12/2 | | | |
| 12/6 | 10/4* | 12/5 | | | |
| 12/8 | 10/5* | 12/15 | | | |
| 12/17 | 10/6* | 12/16 | | | |
| 12/18 | 11/6 | 12/17 | | | |
| 12/19 | 11/11 | 12/21 | | | |
| 12/20 | 11/19 | 12/22 | | | |
| 12/21 | 11/20 | 12/23 | | | |
| 12/22 | 11/24 | 12/25 | | | |
| 12/25 | | 12/26 | | | |
| 12/28 | | 12/29 | | | |

* Data reported from Richmond, CA station.